STATE OF CONNECTICUT *v.* FREDERIC SULLIVAN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. MV 12-11240

Argued October 7, 1963—decided January 6, 1964

*Peter J. Zaccagnino, Jr.,* of Hartford, for the appellant (defendant).

*James D. Mirabile,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J.   After a trial to a jury, the defendant was found guilty of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227 of the General Statutes.   In his

appeal, the defendant does not question his prior conviction on the same charge nor the finding of guilty on the second part of the information. No finding had been requested or made, no motion has been directed to the verdict, and the ultimate finding of guilt beyond a reasonable doubt was not challenged. The appeal is based solely on an assignment of errors directed to rulings of the court and the court's refusal to instruct the jury as requested by the defendant. This abbreviated method of proceeding presents obvious difficulties in the way of a proper review of the case. No finding in a jury case is necessary where the claimed errors concern only the court's rulings on evidence; but each such assignment must be separately numbered and shall refer to an exhibit which shall be annexed and shall set forth the question, the objection, the answer if any, and the exception. Practice Book, 1963, §§ 1005, 1006, 989 (4), (5). This was not done. Where error is to be claimed in the charge to the jury, a finding is necessary. Practice Book §§ 957, 996, Form No. 820. No finding was made. If we did not have all the evidence before us, as required by our rule (Practice Book § 960), we should be powerless to entertain this appeal. We have examined the transcript, including the complete charge of the court, to enable us to consider all of the assignments of error. Our action in doing so is not to be regarded as an approval of the defective procedure pursued on the appeal. *State* v. *Tryon,* 145 Conn. 304, 307; Maltbie, Conn. App. Proc. § 131.

On April 7, 1963, the defendant was arrested on route 2 in Marlborough at 1:50 a.m. The arresting officer, Holmes, a state police trooper, had been following the defendant's vehicle for approximately one mile. During this distance he observed the brake lights on the defendant's car go on and off several times and the vehicle slow down at such times to

speeds of four to five miles an hour, from an average speed of thirty-five miles an hour. Holmes also observed this motor vehicle weave from the right edge of the traveled portion of the road to center of the highway, and it crossed the center line several times. He stopped the vehicle, talked to the defendant, who was the operator, noticed an odor of alcohol on his breath, and observed that his clothing was disarranged and that he was unsteady on his feet. At the Colchester state police barracks, where the defendant was taken after his arrest, Holmes further observed that the defendant's eyes were watery and that the defendant was talkative and had poor balance. The defendant, at the time of his arrest and in his testimony, admitted having consumed two glasses of beer about one hour before his arrest.

The first error claimed is that the court permitted the prosecuting attorney, during his cross-examination of the defendant, to refer, over the defendant's objection, to a document not in evidence. The interrogation objected to follows: "Q.—All right, do you remember saying to him that you needed some coffee to straighten you out? Shall I quote your exact words? A.—Yes. Q.—Quotes, what I need is some coffee to straighten me out, close quotes; do you remember that? A.—Yes [objection and exception]." It has been held that it is not proper to examine a witness before the jury on any document not in evidence or that will be withheld from the jury's inspection. *Johnson* v. *Charles William Palomba Co.*, 114 Conn. 108, 115. That was not the situation here. The question asked of the witness related to a statement supposedly made by him at the time of his arrest. If he had denied it, the document purporting to contain the statement, if otherwise admissible, might have been offered in evidence as an admission and to impeach

his credibility. Since he admitted making the statement, there was no need to introduce the document. The ruling of the court was not erroneous.

The defendant next assigns error in the remarks of the presiding judge in the presence of the jury and in the course of the direct examination of Dr. Kardys regarding the defendant's condition of health. The doctor had testified earlier as follows: "Q.—Let me ask you this question: Is it reasonably probable based on your medical certainty and experience that this man is diabetic with the two readings that you had showing plus one sugar? A.—I would suspect it, but I couldn't make a positive statement until I had him in a hospital and did the other things. He could be a mild diabetic or he could be a latent diabetic." The doctor had also testified that he had seen the defendant once on March 18, at which time he gave him a complete physical examination. He suggested to him at the time that he should go into a hospital for further and more definite tests to determine whether he had diabetes. The defendant was again examined by the doctor a week later, when a urinalysis was performed which was not significant enough for diagnostic purposes; and hospitalization was again recommended. The witness was then asked: "Doctor, would you tell the jury what the results of your diagnosis were of Mr. Sullivan?" Upon objection, the court remarked: "It seems to me you have gone into that already, and the doctor didn't make any conclusion . . . he has already testified he found nothing." Viewing the statement against the background of the doctor's earlier testimony, we find nothing improper or prejudicial in the remarks of the presiding judge. They constituted an unadorned statement of what already was in evidence. Further inquiry could not reasonably be expected to elicit anything more than a conjectural or speculative

answer. The defendant gains nothing by this assignment.

In his third assignment, the defendant claims error in excluding the following question addressed to Dr. Kardys: "Doctor, is it reasonably probable based upon your examination, based upon your medical experience, that Mr. Sullivan's condition on April 7 was the same as it was on March 18 when you examined him?" The doctor had not examined the defendant within a reasonable time after his arrest or at any time thereafter. The answer called for would have been a sheer guess. The ruling of the court was correct.

The fourth assignment of error illustrates the uncertainty which results from a failure to observe the rules of procedure—as we noted above. The claimed error is vaguely stated as "refusing to allow an opinion to be rendered by a doctor as to the reliability or unreliability of the tests given to the defendant for under the influence of liquor." There was considerable testimony by Dr. Kardys of this general nature, some of which was admitted and some excluded; and as to some exclusions no exception was taken. To conserve to the defendant the benefit of his rights, we have examined the transcript in detail and conclude that this assignment of error relates to the exclusion of a hypothetical question, the purport of which was whether, in the doctor's opinion, observations made by a lay person of the condition of the defendant as to his sobriety, without an examination by a physician or the benefit of chemical tests, were reliable to ascertain whether or not the defendant was under the influence of intoxicating liquor. Clearly, such a question was inadmissible for a variety of reasons, the principal one being that it called for an opinion on a matter which was solely for the jury to deter-

mine. It is for the jury to pass on the weight and credibility to be accorded to the evidence before them, and no expert testimony is permissible to direct them how they should do it. Testimony of the police officer was in the nature of expert opinion derived from experience and admissible as such. Any inexperienced observer of reasonable intelligence may state an opinion formed from his observations as to the condition of a person due to the consumption of intoxicating liquor. *State* v. *Jones,* 124 Conn. 664, 668. This assignment of error is without merit.

The fifth assignment is based on the exclusion of the following question: "Based upon your examination of Mr. Sullivan, Doctor, as you saw him on both March 18 and March 25, would he without the presence of alcohol exhibit many of the symptoms that were testified here today regarding what they saw of him on the night of April 7?" The doctor did not examine him on April 7. The mere statement of the question exhibits its fatuity. Combining a known quantity with a quantity unknown does not lead to a reasonable probability. There was no error in the court's ruling.

The sixth claim of error is the refusal of the court to allow a question asked of the doctor as to whether or not it was reasonably probable that a hypertensive condition which the defendant had on March 25 still existed on April 7. No exception appears to have been taken to this ruling and we are not obliged to consider it. Apart from this procedural defect, the question misstated the evidence as to the date of the doctor's examination for blood pressure, the checkup on March 25 being confined to a urinalysis.

The seventh assignment is based on the sustaining of an objection to the question asked of the

doctor whether the defendant had consumed any alcoholic beverage at the time of his visits on March 18 and 25. The answer sought was evidently intended to provide some basis for comparison between the symptoms exhibited on March 18 and 25, specifically flushing of the face and watering of the eyes, and those observed on April 7, after the defendant's arrest. The question introduced a hypothetical situation; the witness was not qualified to say what the condition of the defendant was on April 7. It failed to include such other significant facts in evidence as the gait of the defendant, his manner of speech, and his erratic operation of a motor vehicle. There was no error in the court's ruling.

The eighth assignment claims error in the exclusion of questions asked of Dr. Kardys as to the reliability of observations—concerning a person's being under the influence of intoxicating liquor—made by a lay witness without the benefit of a chemical test or a knowledge of the person's condition as to health. The doctor had not qualified as an expert in the special field of toxicology and the scientific evaluation of the various chemical tests, and his opinion would offer nothing more than an estimate of the weight to be given to the testimony offered by the state. That was for the jury to determine upon proper instructions from the court. This assignment is without merit.

The ninth assignment of error is the bare statement that the court refused "to allow the doctor as an expert to testify to the symptoms of fatigue." A search of the transcript fails to disclose what the defendant has assigned as error, and his brief sheds no light on this particular claim. At one point, the doctor was asked to describe the symptoms of extreme fatigue. An objection on the ground of

remoteness and lack of foundation was sustained. The defendant had testified as to his fatigue at the time of arrest. The jury had the evidence in full. No expert testimony on fatigue in general was needed by the jury to determine a condition which is known to everyone. The objection was correctly sustained.

In rebuttal the state called the arresting officer, who, over the defendant's objection, was permitted to testify that he informed the defendant, after his arrest, that he had the opportunity to submit voluntarily to a chemical test, specifically the intoximeter, urine, or blood test. The defendant refused. The admission of this testimony is claimed as error in the tenth assignment. We have held that evidence of refusal of a person under arrest to submit samples of urine and blood for tests for alcohol was inadmissible in a prosecution against him for operating a motor vehicle while under the influence of intoxicating liquor. *State* v. *Munroe,* 22 Conn. Sup. 321, 330. When a person is in custody he has the right to speak or remain silent; and his silence cannot be laid in evidence against him. *State* v. *Bates,* 140 Conn. 326, 329. We do not have here the situation where the refusal may be accompanied by words or acts in the nature of admissions by conduct. *State* v. *Tryon,* 145 Conn. 304, 308. At various times during the trial, defense counsel had questioned Dr. Kardys as to the reliability of simple observation or the performance of the usual physical tests to determine whether a condition of insobriety existed. The purport of his testimony was that, in addition to what is observed about a person suspected of being under the influence of intoxicating liquor, a blood, urine or alcoholometer test was indispensable. Allowing that the defendant had the right to seek to discredit the value of the state's evidence and, in doing so, to persuade

the jury that such evidence without corroborating chemical tests was worthless, he was then in no position to close the door against further inquiry into the transparent implications of such testimony. Having raised the issue himself, he cannot in good grace complain that the state did in fact offer to give him the kind of test which he considers indispensable and that his own refusal blocked the administration of a test he claims that he needed to determine his guilt or innocence. The rebuttal testimony was properly admitted. It may be noticed, in addition, that the court fully instructed the jury that the defendant had a constitutional right to refuse to submit to the test offered and the jury were cautioned not to draw any inference, from his refusal, as to his condition at the time of arrest. This fully protected the defendant's rights.

The eleventh assignment of error, that the assistant prosecutor was permitted to argue to the jury that, had the defendant agreed to take a chemical test a doctor would have been called, is obviously without merit and requires no further consideration.

The final claim is that the court erred in refusing to charge in accordance with the defendant's requests. These were as follows: "(1) The requirement that the state prove guilt beyond a reasonable doubt means that it must establish all of the essential elements of the crime by proof which is wholly consistent with guilt and inconsistent with any other rational conclusion. Reasonable inference from the facts may be established but the jury may not resort to speculation and conjecture. Proof of guilt must exclude every reasonable supposition of the innocence of the accused. *State* v. *DeCoster*, 147 Conn. 502. (2) Penal statutes are strictly construed against the state and liberally in favor of the accused. *State* v. *Zazzaro*, 128 Conn. 160. (3) The

state must prove beyond a reasonable doubt the two essential elements of the crime, operation and under the influence. *State* v. *Newman*, 127 Conn. 398. (4) Although it may turn the scale where the evidence is closely balanced, in a criminal case the presumption of innocence protects the accused until and unless the state has produced enough evidence to justify the trier of the facts in finding guilt beyond a reasonable doubt. *State* v. *McDonough*, 129 Conn. 483."

All but the second request were fully covered by the court in adequate language although not in the precise words of the requested charges. *State* v. *Penn*, 144 Conn. 148, 153; *Crower* v. *Zion Baptist Church, Inc.*, 143 Conn. 90, 99. The second request was properly refused. *DeCarufel* v. *Colonial Trust Co.*, 143 Conn. 18, 20. It is the function of the court and not of the jury to construe the law.

There is no error.

In this opinion DEARINGTON and KINMONTH, Js., concurred.